IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

Scripps Networks, LLC
9721 Sherrill Boulevard
Knoxville, TN 37932

Television Food Network, G.P.
1180 Avenue of the Americas
New York, NY 10036

          Plaintiffs,

    v.

miBook LLC
34208 Aurora Road #240
Solon, OH 44319

Bruce Teicher
403 Reserve Trail
Chagrin Falls, OH 44022

          Defendants.

: Case No. 2:10-cv-568
:
: Judge _____
:
: Magistrate _____

**COMPLAINT FOR COPYRIGHT INFRINGEMENT,
COUNTERFEITING, TRADEMARK INFRINGEMENT,
<u>FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION</u>**

Plaintiffs Scripps Networks, LLC ("SNL") and Television Food Network, G.P. d/b/a "Food Network" ("TVFN") (collectively, SNL and TVFN, the "Plaintiffs") for their complaint against defendants miBook LLC ("miBook") and Bruce Teicher (collectively, miBook LLC and Bruce Teicher, the "Defendants") state as follows:

<u>NATURE OF ACTION</u>

    1.    This is an action for copyright infringement under 17 U.S.C. §501, counterfeiting and infringement of federally registered trademarks arising under 15 U.S.C. §1114, and unfair

1

competition, false designation of origin, infringement and misleading representation of facts arising under 15 U.S.C. §1125(a).

## THE PARTIES

2. SNL is a limitied liability company organized under the laws of the State of Delaware, with a principal place of business at 9721 Sherrill Boulevard Knoxville, TN 37932.

3. SNL owns and operates the cable and satellite networks Home & Garden Television Network ("HGTV") and Do-It-Yourself Network ("DIY Network") and owns all of the trademarks associated with each.

4. TVFN is a general partnership existing under the laws of the State of Delaware, with a principal place of business at 75 Ninth Avenue, New York, New York, 10011. Scripps Networks, LLC is the managing general partner of TVFN.

5. TVFN operates the cable and satellite network Food Network and owns all of the trademarks associated with Food Network.

6. miBook LLC is, upon information and belief, a limited liability company organized under the laws of the State of Ohio, with a business address at 34208 Aurora Road #240, Solon, OH 44319.

7. Bruce Teicher, upon information and belief, is an individual residing at 403 Reserve Trail, Chagrin Falls, OH 44022.

8. Upon information and belief, Bruce Teicher is a principal of miBook LLC and knowingly and willfully directed, oversaw and actively engaged in the infringing activities complained of herein.

## JURISDICTION AND VENUE

9. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, infringement of trademarks registered under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, 15 U.S.C. § 1114(a); and unfair competition, false designation of origin, infringement and misleading representation of facts under the Lanham Act, 15 U.S.C. § 1125(a).

10. This court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

11. Upon information and belief, Defendants have sold their infringing products within this judicial district.

## BACKGROUND FACTS

12. Plaintiffs are all affiliates of Scripps Networks Interactive, Inc. ("SNI"), a publicly traded company (NYSE: SNI), which is an industry leader in lifestyle media.

13. Plaintiffs own and/or operate six cable television networks, including Food Network, HGTV and DIY, along with over 60 website properties.

14. In relation to those operations, Plaintiffs own rights in such trademarks as FOOD NETWORK, HGTV and DIY NETWORK (collectively the "Scripps Common Law Marks").

15. In 1994, a predecessor entity to SNI launched HGTV, a cable and satellite television network which airs programming relating to real estate, homes, gardening and other lifestyle activities.

16. Since its launching, HGTV has become a leader in lifestyle media, developing some of the most relevant content available on television, the Internet and satellite radio, in books and magazines, and on today's emerging media platforms.

17. The HGTV viewing audience has grown exponentially and the network is currently distributed to more than eighty-nine (89) million U.S. households, making it one of the largest television networks in the world devoted to the home and garden, as well as its related subjects.

18. In addition to being one of the most viewed cable television networks devoted to the home and garden, HGTV offers content via its website at hgtv.com and has been doing so since at least as early as 1996.

19. HGTV's website focuses on everything from home design for the novice, to home improvement safety guidance, to articles and tips from HGTV celebrities, all under the trademark HGTV.

20. Today, the HGTV website provides a full multi-media experience with many how-to guides, articles, videos and information on topics relating to homes and gardening. The website averages more than 5.2 million unique visitors per month.

21. HGTV also distributes an electronic newsletter, under the HGTV mark, to millions of subscribers.

22. Food Network made its debut in 1993.

23. Since its debut, Food Network's audience has expanded rapidly and the network is currently distributed to more than ninety-six (96) million U.S. households, making it one of the world's largest television networks devoted to cooking, the culinary arts, and its corresponding culinary lifestyle.

24. In addition to being one of the most viewed cable television networks devoted to cooking and the culinary arts, TVFN provides "Food Network" information on cooking and culinary arts via its website at foodnetwork.com.

25. Food Network's website provides a true multimedia experience with everything from recipes for the novice chef to how-to-videos, to kitchen safety guidance, to articles and tips from Food Network celebrities, all under the FOOD NETWORK trademark.

26. Today, Food Network website averages more than eight (8) million unique visitors per month.

27. In addition, Food Network offers an electronic newsletter which is sent to millions of subscribers under the FOOD NETWORK trademark.

28. The DIY Network made its debut in 2001.

29. Since its debut, the DIY Network audience has also grown exponentially and the network is currently distributed to more than fifty (50) million U.S. households, making it one of the largest television networks devoted to creative projects for do-it-yourself enthusiasts.

30. In addition to being one of the most viewed cable television networks devoted to home improvement projects, DIY Network provides information on home projects via its website at diynetwork.com.

31. The DIY Network website provides a true multimedia experience with over 55,000 resources and over 10,000 short-form videos and instruction guides for projects, all under the DIY NETWORK trademark.

32. Today, the DIY Network website averages millions of unique visitors per month.

33. In addition, DIY Network offers an electronic newsletter which is sent to millions of subscribers under the DIY NETWORK trademark.

**Plaintiffs' Marks and Copyrights**

34.   In connection with the operation of Food Network, DIY Network and HGTV, Plaintiffs own, among many others, the following federally registered trademarks and service marks:

FOOD NETWORK-HD — Registration No. 3,319,967 by Television Food Network, G.P. for use on distribution of television programs for others; entertainment services, namely, providing television programs in the fields of food, cooking, recipes, restaurants, entertaining, nutrition and the culinary arts via television, global computer networks, wireless global computer networks, cable, satellite, and fiber optics; audio-visual programming services, namely, television programming in Class 41;

**FOOD NETWORK** — Registration No. 2,791,044 by Television Food Network, G.P., for use on cable television broadcasting services in Class 38;

**FOOD NETWORK** — Registration No. 2,771,532 by Television Food Network, G.P. for use on entertainment services in the nature of ongoing audio-visual programs provided via television, satellite and digital audio and video transmission over wired and wireless networks in the fields of cooking and culinary arts, health, fitness, and nutrition in Class 41;

 Registration No. 2,929,656 by Television Food Network, G.P. for use on providing information via a global computer information network in the fields of cooking and culinary arts in Class 43;

 Registration No. 2,924,169 by Television Food Network, G.P. for use on entertainment services in the nature of ongoing television programs in the field of cooking and culinary arts, health, fitness and nutrition and distribution for others and production of television programs in Class 41;

 Registration No. 2,924,168 by Television Food Network, G.P. for use on cable television broadcasting services in Class 38;

 Registration No. 3,689,134 by Television Food Network, G.P. for use on distribution of television programs for others; entertainment services; namely, providing television programs in the fields of food, cooking, recipes, restaurants, entertaining, nutrition and the culinary arts via television, Global computer networks, wireless global computer networks, cable, satellite, and fiber optics; audio-visual programming services, namely television programming in Class 41;

 Registration No. 3,691,970 by Television Food Network, G.P. for use on cable television broadcasting services in Class 38;

HGTV  Registration NO. 3,158,828 by Scripps Networks, Inc. for use on cable television broadcasting services in Class 38;

HGTV-HD  Registration No. 3,319,954 by Scripps Networks, Inc. for use on distribution of television programs for others; entertainment services, namely, providing television programs in the fields of gardening and landscaping, crafts and hobbies, sewing and quilting, entertaining, auctions, furniture, antiques and collectibles, interior design and decorating, architecture and home design, building, improvement, repair and renovation, and similar subjects in the fields of homes and gardens via television, global computer networks, wireless global computer networks, cable, satellite, and fiber optics; audio-visual programming services, namely, television programming in Class 41;

HGTV-HD  Registration No. 3,319,952 by Scripps Networks, Inc. for use on cable television broadcasting services in Class 38;

HGTV PRO  Registration No. 3,336,010 by Scripps Networks, Inc. for use on the following classes:

Class 37 – providing information via a global computer

7

|  |  |
|---|---|
|  | information network in the fields of home building, improvement, repair and renovation; providing information via a global computer information network in the field of furniture and antique restoration; |
|  | Class 41 – providing information via a global computer information network in the field of crafts and hobbies, providing information via a global computer information network in the field of collecting furniture and antiques; |
| **HGTV** | Registration No. 2,405,267 by Scripps Networks, Inc. for use on printed materials and publications, namely, magazine and books on the subjects of television programs and videos, gardening and landscaping, cooking and entertaining, crafts and hobbies, sewing and quilting, furniture and antiques, interior design and decorating, home building, improvement, repair and renovation and similar topics in Class 16; |
| **HGTV** | Registration No. 2,378,758 by Scripps Howard Broadcasting Co. dba Home & Garden Television for use on pre-recorded videocassettes, pre-recorded video disks, CD-ROMs, and pre-recorded audio cassettes featuring information about gardening and landscaping, crafts and hobbies, sewing and quilting, culinary arts, cooking and entertaining, auctions, furniture, antiques and collectibles, interior design and decorating, architecture and home design, building, improvement, repair and renovation, and similar subjects in Class 9; |
|  | Registration No. 2,205,702 by Scripps Howard Broadcasting dba Home & Garden Television for use on cable television broadcast services in Class 38; |
| **DIY NETWORK** | Registration No. 3,018,506 by Scripps Networks, Inc. for use on cable television broadcasting services in Class 38; |
| **DIY** | Registration No. 2,457,989 by Scripps Howard Broadcasting Co. dba Home & Garden Television for use on providing a website of information about television programming, news and weather, gardening and landscaping, crafts and hobbies, sewing and quilting, furniture and antiques, interior design and decorating, home building, improvement, repairs and renovation and similar projects and topics in Class 42; |

Copies of the Certificates of Registration for each of these trademarks (the "Scripps Registered Marks") are attached to this complaint as Exhibit A. The Scripps Registered Marks, together with the Scripps Common Law Marks, are collectively referred to as the "Scripps Marks").

35. The certificates of registration identified in the preceding paragraph are valid and subsisting, and Plaintiffs own record title to their respective registered trademarks described above.

36. The certificates of registration are prima facie evidence of the validity of the Scripps Registered Marks, of the Plaintiffs' respective ownership of the Scripps Registered Marks, and Plaintiffs' exclusive right to use the Scripps Registered Marks in connection with the goods and services specified in the certificates of registration enumerated above pursuant to 15 U.S.C. § 1115(a), as well as constructive notice of Plaintiffs' claim of ownership under 15 U.S.C. § 1072.

37. Scripps Registered Marks 2,791,044, 2,771,532, 2,405,267, 2,378,758 2,205,702 and 2,475,989 are incontestable, which is conclusive evidence of their validity under 15 U.S.C. § 1115(b).

38. Plaintiffs have used each Scripps Mark continuously and exclusively in connection with the networks and related products and services since the inception of those respective networks as detailed above.

39. Plaintiffs maintain strict control over the use of the Scripps Marks.

40. As detailed above, since the debut of each network, the Scripps Marks have been advertised extensively and have received significant exposure throughout the United States.

41. Because of this extensive and uniform promotion, marketing and advertisement, consumers have come to associate the Scripps Marks exclusively with Plaintiffs and their networks.

42. In connection with the operation of the networks, Plaintiffs own the copyright in numerous television show series.

43. Plaintiffs own the copyright in the following shows, among many others, which air on DIY Network: *Ask DIY, B Original, Bathroom Renovations, Build A Deck, Complete Fix It, Cool Tools, Desperate Landscapes, DIY Basics, DIY To the Rescue, First Time Gardiner, Home Made Easy, Kitchen Renovations, Sweat Equity* and *Weekend Handyman.* Copyright Registration Nos. PA 1-677-355 and PA 1-677-356 cover the content of some episodes of these shows which have been infringed. Copies of these U.S. Copyright Certificates of Registration are attached to this complaint as Exhibit B.

44. Plaintiffs own the copyright in the following shows, among many others, which air on Food Network: *30 Minute Meals, Cooking Thin, Everyday Italian, Good Eats, Quick Fix Meals with Robin Miller* and *Sweet Dreams.* Copyright Registration Nos. PA 1-679-903, PA 1-679-907, PA 1-679-906, PA 1-679-904, and PA 1-679-902 cover the content of some episodes of these shows which have been infringed. Copies of these U.S. Copyright Certificates of Registration are attached to this complaint as Exhibit C.

45. Plaintiffs own the copyright in the following shows, among many others, which air on HGTV: *Bed & Bath Design, Color Splash, Design on a Dime, Decorating Cents, Designer Finals, Gardening By the Yard, HGTV Dream Home, I Want That!, Mission Organization* and *Quick Fix.* Copyright Registration Nos. PA 1-677-357 and PA 1-677-358 cover the content of some episodes of these shows which have been infringed. Copies of these

U.S. Copyright Certificates of Registration are attached to this complaint as Exhibit D. Collectively, the programs which air on DIY Network, Food Network and HGTV, the "SNL Programs."

### Defendant's Infringing Activities

46. In 2007, SNL entered into a licensing arrangement with Photoco Inc., an Ohio corporation ("Photoco").

47. At the time of the execution of the license agreement, Bruce Teicher was the Chief Executive Officer of Photoco.

48. Under the terms of the license agreement, SNL, on behalf of itself for HGTV and DIY Network and on behalf of TVFN for Food Network, licensed to Photoco the Scripps Marks as well as clips from the SNL Programs.

49. The license contemplated that Photoco would bring a product known as the miBook device to market. The copyrighted clips from the SNL Programs would be used to make interactive home and cooking books that could be used with the miBook device. Plaintiffs were to receive a royalty on all sales of the interactive titles which displayed the Scripps Marks and used content provided by Plaintiffs.

50. Pursuant to the license, Plaintiffs delivered over 1000 full length episodes of SNL Programs to Photoco.

51. The express terms of the license agreement indicated that it could not be assigned by Photoco without the written consent of Plaintiffs.

52. Plaintiffs never consented in writing, or otherwise, to the assignment of the Photoco license.

53.     While Photoco delivered royalty reports to Plaintiffs for the second and third quarter of 2008, no royalty payments were ever made.

54.     In December of 2008, Plaintiffs' personnel began to inquire about the missing royalty payments.  Photoco never responded.

55.     During the first half of 2009, Plaintiffs made repeated efforts to contact Photoco and collect on the past due royalty payments.  Photoco's office phone had been disconnected and calls to Bruce Teicher's personal cell phone were neither answered, nor returned.

56.     Plaintiffs never received any further communication from Photoco.

57.     Through investigation, Plaintiffs learned that Photoco had lost its line of credit in January of 2009.  Upon information and belief, a secured creditor of Photoco then liquidated its assets.

58.     Records maintained by the Secretary of State of Ohio indicate that Photoco is still an active corporation.

59.     miBook LLC is not Photoco, but a separate legal entity organized under the laws of the State of Ohio.

60.     miBook LLC is also not a successor organization by way of merger, name change or otherwise to Photoco.

61.     In early 2010, Plaintiffs discovered that miBook was operating a website at www.mibook.com.  A printout of that website is attached as Exhibit E.

62.     The miBook website displays the Scripps Marks (the Food Network logo, the DIY Network logo and the HGTV logo) and indicates that each network is a "media partner" of miBook.

63. Plaintiffs have no relationship with miBook and are not miBook's media partners.

64. miBook is selling, through its own website and through retailers such as Best Buy, titles for the miBook device which depict the Scripps Marks and are comprised of copyrighted clips from the SNL Programs.

65. miBook as no right or authorization to make any such use of the Scripps Marks or the copyrighted clips from the SNL Programs.

66. Upon further investigation, Plaintiffs discovered that Bruce Teicher, the CEO of Photoco, is also the CEO of miBook LLC.

67. Upon information and belief, Bruce Teicher formed miBook LLC in an attempt to carry on the miBook device business, avoid the creditors of Photoco and shield himself from personal liability for his willfully infringing activities.

68. As a signatory to the Photoco license, as a principal of Photoco, and as a licensed attorney, Bruce Teicher was intimately aware of the terms of the license and that it was not assignable.

69. Bruce Teicher was further aware that Photoco had never paid any royalties to Plaintiffs.

70. Despite this knowledge, Bruce Teicher, upon information and belief, as an officer of miBook LLC, personally directed this new entity to infringe upon the Scripps Marks and Plaintiffs' content for the purposes of marketing the miBook device.

71. Such acts were undertaken willfully and in conscious disregard of the rights of Plaintiffs.

72. Despite receiving a cease and desist letter from Plaintiffs, and despite a follow-up letter and a phone call between counsel, where those demands were repeated, Defendants continue to use the Scripps Marks, both on their website, in marketing and on actual products.

73. Such use of the Scripps Marks by Defendants is likely to confuse consumers purchasing the miBook titles or viewing the miBook website into believing that Plaintiffs are "media partners" with Defendants or otherwise sponsored, approved of, or endorsed the products made by miBook, which is false.

74. Plaintiffs cannot control the quality of Defendants' products which bear the Scripps Marks.

75. Defendants will not cease using the Scripps Marks and copyrighted content from the SNL Programs unless enjoined by this Court.

## COUNT I
## COPYRIGHT INFRINGEMENT

76. Plaintiffs incorporate the allegations of paragraphs 1 through 75 as if fully set forth herein.

77. Plaintiffs own all rights, title and interest in the SNL Programs.

78. The SNL Programs are original works and copyrightable subject matter under the laws of the United States.

79. Plaintiffs obtained U.S. Copyright Registration Nos. PA 1-677-355, PA 1-677-356, PA 1-679-903, PA 1-679-907, PA 1-679-906, PA 1-679-904, PA 1-679-902, PA 1-677-357 and PA 1-677-358 for certain of the SNL Programs.

80. Defendants had access to the copyrighted materials from the SNL Programs originally delivered to Photoco.

81. Upon information and belief, Defendants copied substantial elements of the copyrighted materials from the SNL Programs when they began selling the miBook titles.

82. Upon information and belief, Defendants have been and will continue to willfully infringe upon Plaintiffs' copyrights in the materials from the SNL Programs by reproducing the materials and selling them as part of multi-media books for the miBook device.

83. Defendants' acts of infringement have caused, and continue to cause irreparable damage to Plaintiffs.

84. By reason of the foregoing, Defendants are liable to Plaintiffs for Defendants profits and damages in accordance with 17 U.S.C. § 504 as well as costs and attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT TWO
## COUNTERFEITING

85. Plaintiffs incorporate the allegations contained in paragraphs 1 through 84 as if fully restated herein.

86. Defendants use counterfeit copies of the Scripps Registered Marks on goods in connection with which such use is likely to cause confusion, mistake or deception.

87. Defendants used these copies of the Scripps Registered Marks with the knowledge that they were counterfeit and with the intention that such use would confuse consumers into believing that the goods were authorized by Plaintiffs.

88. Defendants' use of the Scripps Registered Marks to advertise, promote, offer for sale, distribute, and sell the counterfeit miBook titles was, and is, without the consent of Plaintiffs.

89. The acts of Defendants constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

90. The acts of Defendants are both willful and malicious.

91. By reason of the foregoing, Defendants are liable to Plaintiffs for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c), or, at the election of Plaintiffs, an amount representing three (3) times Plaintiffs' damages or Defendants' illicit profits; and (b) reasonable attorneys' fees, investigative fees, and pre-judgment interest as provided by 15 U.S.C. § 1117(b).

## COUNT TWO
## INFRINGEMENT OF REGISTERED MARKS

92. Plaintiffs incorporate the allegations contained in paragraphs 1 through 91 as if fully restated herein.

93. Defendants' use of the Scripps Registered Marks in connection with advertising and promoting the miBook device was with clear and actual knowledge of Plaintiffs' rights in those marks.

94. Defendants' use of the Scripps Registered Marks will create a likelihood of confusion through an association of sponsorship, affiliation or endorsement by Plaintiffs in an appreciable number of the consumers of the miBook device and titles offered by Defendants as well as in all potential consumers who view the website located at www.mibook.com, which bears numerous instances of the Scripps Registered Marks and makes reference to Plaintiffs being "media partners" with miBook, which is false.

95. The goodwill of the Scripps Registered Marks is of enormous value, and Plaintiffs are and will continue to suffer immediate and irreparable harm should Defendants' unauthorized offering of products bearing the Scripps Marks.

96. The acts of Defendants in their unauthorized use of the Scripps Registered marks in connection with offering the miBook device are intended to and will divert to the Defendants the benefit of the business reputation and goodwill symbolized by the Scripps Marks which belong exclusively to Plaintiffs. Such acts will confuse consumers into believing that Plaintiffs are affiliated with Defendants, which they are not.

97. Defendants' infringing use of the Scripps Registered Marks and the offering of its miBook products bearing those marks will likely continue unless enjoined by this Court.

98. Plaintiffs are entitled to a preliminary and thereafter permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT THREE
## FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION

99. Plaintiffs incorporate the allegations contained in paragraphs 1 through 98 as if fully restated herein.

100. Defendants' use of the Scripps Marks in connection with their offering of lifestyle media products falsely represents that such products originate with, are sponsored, endorsed, underwritten and/or licensed by Plaintiffs.

101. Defendants' statement on the miBook.com website that Plaintiffs are "media partners" of miBook LLC is absolutely a false misstatement of fact intended to deceive

17

consumers into purchasing Defendants' products under the misguided belief that they are backed by, licensed by or otherwise affiliated with Plaintiffs, which is false.

102. Defendants are unauthorized users of the Scripps Marks and Plaintiffs cannot exercise any control over the nature and quality of Defendants miBook products.

103. Upon information and belief, Defendant's false designation of origin and misleading representations have been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Plaintiffs among consumers of lifestyle media products.

104. Plaintiffs' goodwill among consumers of lifestyle media products and services is of enormous value, and Plaintiffs will suffer irreparable harm if Defendants' false designation of origin as to the Scripps Marks and misrepresentations as to a "media partnership" are allowed to continue.

105. Defendant's false designation of origin and misrepresentations will likely continue unless enjoined by this Court.

106. Plaintiffs are entitled to a preliminary and thereafter permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

 WHEREFORE, Plaintiffs request that the Court order:

1.  The issuance of a preliminary and thereafter permanent injunction enjoining Defendants, their officers, directors, agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from using the Scripps Marks or materials from the copyrighted SNL Programs in any manner in the advertising, promoting or selling of any lifestyle media products, including, but not limited to, miBook products, and from infringing or falsely designating the origin of the Scripps Marks;

2. That Defendants account to Plaintiffs for their profits, and the actual damages suffered by Plaintiffs as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Plaintiffs' known rights;

3. The issuance of a permanent injunction enjoining Defendant from using or seeking to register, as a trademark, trade name, corporate name or domain name, any of the Scripps Registered Marks or any confusingly similar marks or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Plaintiffs with Defendants;

4. The issuance of a permanent injunction enjoining Defendant from using any of the copyrighted materials from the SNL Programs for any purpose whatsoever;

5. The issuance of an Order directing the immediate recall of all miBook products in the market which bear any of the Scripps Marks or contain content from the SNL Programs;

6. That Defendants surrender all copies of any advertising materials or miBook products bearing the Scripps Marks for destruction, and that it be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

7. That Defendants contact all retail customers of the product and consumers it is aware of who purchased the miBook device and advise them that neither miBook nor any of its products are connected or, in any way affiliated, with Plaintiffs;

8. That Defendants pay compensatory and treble damages to Plaintiffs;

9. That Defendants pay statutory damages for counterfeiting in the amount of $2,000,000 per counterfeited mark, as well as prejudgment interest, costs and attorney fees as provided in 15 U.S.C. §1117;

10. That Defendants disgorge all profits realized from its offering of products bearing the Scripps Marks or containing materials from the SNL Programs;

11. That Defendant pay Plaintiffs' attorneys' fees, together with the costs of this suit; and

12. All other and further relief as may be just and equitable.

Respectfully submitted,


*/s/ Brian J. Downey*
Brian J. Downey (Trial Attorney)(0069163)
Nicolette R. Hudson
Samantha M. Quimby
FROST BROWN TODD LLC
10 W. Broad Street
Suite 2300
Columbus, OH 43215
Telephone:  (614) 559-7281
Facsimile:  (614) 464-1737

Attorneys for Plaintiffs

COLLibrary 0000000.0001541 217768v2